## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 4:96-CR-00203 |
| v. | (Chief Judge Brann) |
| RAYFUL EDMOND, III, | |
| Defendant. | |

## MEMORANDUM OPINION

### JULY 24, 2023

## I.    BACKGROUND

In 1996, Rayful Edmond, III pled guilty, pursuant to a written plea agreement, to conspiracy to possess with the intent to distribute five or more kilograms of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 846, and one count criminal forfeiture, in violation of 21 U.S.C. § 853.[1] Edmond's convictions related to his conduct while incarcerated at the United States Penitentiary in Lewisburg, Pennsylvania when, from approximately January 1991 until July 1994, Edmond participated in a large conspiracy to distribute cocaine.[2] For a commission, Edmond connected cocaine producers and their agents in Colombia with drug traffickers in the District of Columbia area, who would then resell that cocaine to others in the region.[3]

---

[1]    Doc. 99-2 at 3; *see* Docs. 2, 16.

[2]    Doc. 99-2 at 5.

[3]    *Id.*; *see id.* at 5-8.

As part of that plea agreement, Edmond agreed to cooperate with the Government, but bargained for any benefit of that cooperation to be applied to the sentence that his mother, Constance Perry, was then serving.[4] Edmond ultimately fulfilled his portion of the agreement, the Government filed a Federal Rule of Criminal Procedure 35(b) motion in the United States District Court for the District of Columbia, and Constance Perry's sentence was reduced to time served.[5]

Prior to Edmond's sentencing, a presentence report (PSR) was prepared that calculated a base offense level of 38, as the offense involved 150 kilograms or more of cocaine; the offense level was increased by two points because the offense involved firearms, pursuant to *U.S. Sentencing Guidelines Manual* § 2D1.1(b)(1), and by four levels because Edmond was an organizer or leader of criminal activity, pursuant to USSG § 3B1.1.[6] The PSR applied a three-level reduction for acceptance of responsibility, resulting in a total offense level of 41; that, along with a criminal history category III, resulted in a sentencing guidelines range of 360 months to life imprisonment.[7]

The two-level increase for possession of a firearm did not arise because of Edmond's actual physical possession of a firearm. Rather, as the PSR explained:

> (I)t was reasonably foreseeable to Mr. Edmond that his fellow conspirators were using, and had used firearms to further the objects of the conspiracy, and to protect themselves, their illegal profits, and their

---

[4]   Doc. 64-1 at 5-6.
[5]   Doc. 64-2 at 2.
[6]   Doc. 99-2 at 10-11.
[7]   *Id.* at 11-14.

contraband drugs. Although Edmond was not in actual possession of any firearms, nor did he direct others to use firearms during this conspiracy, there is sufficient evidence to infer that the conspiracy contemplated the use and possession of firearms as tools of the drug trade. Conspirators Michael A. Jackson and James Marshal Corbin, Jr. kept a semiautomatic "Uzi-like" close assault pistol in the oven of their apartment in Suitland, Maryland. On October 22, 1992, police recovered that weapon there, along with another semiautomatic pistol underneath the front seat of Jackson's BMW. The firearm in Jackson's care was at maximum operational readiness with a loaded magazine, a round in the chamber, and the hammer cocked.

Violence and use of firearms was within the scope of the criminal activity. In numerous wiretapped conversations between Edmond and the Colombian cocaine supplier, Osvaldo Trujillo-Blanco, aka "Chicky," Chicky threatened to have Jackson and Corbin killed for non-payment of their drug debts. He made frequent coded references to this each time he threatened to "put them in check" or "checkmate." Jackson and Corbin were known to be drug dealers and of course the criminal milieu was aware of this also. Robbers regard drug dealers as appealing targets because they are likely to have a large cache of drugs or money, and because they are unlikely to complain to the police if robbed of illegal drugs and drug proceeds. In fact, on August 24, 1992, Michael Jackson returned home to his Rena Road, Suitland, Maryland apartment to discover a burglary in progress. In a wiretapped conversation on his cell phone, he telephoned his partner, Corbin, and asked Corbin to come home immediately, bring a firearm which he referred to as a "joint," and bring help. In the recorded call from Jackson's car phone, Jackson told Corbin that the burglars had fired upon him and he had returned fire. Obviously, Jackson traveled with a loaded firearm on his person, which was corroborated by the FBI seizure of Jackson's loaded handgun from underneath the driver's seat on October 22, 1992. Indeed, on August 24, 1992, neighbors had called the police emergency number with reports of "shots fired" in the Rena Road Apartment. Further, Edmond knew that Jackson and Corbin had used violence and firearms in past criminal conduct.[8]

---

[8] *Id.* at 9.

Edmond had no objections to the PSR and, accordingly, the late Honorable Malcolm Muir[9] calculated a sentencing guidelines range of 360 months to life imprisonment.[10] After hearing from the parties, Judge Muir sentenced Edmond to 360 months' imprisonment.[11] That sentence was to run consecutive to the life sentence imposed by the United States District Court for the District of Columbia that Edmond was already serving.[12]

In August 2021, Edmond filed a motion for a sentence reduction, pursuant to USSG Amendment 782.[13] The Court granted that motion and reduced Edmond's sentence to 324 months' imprisonment.[14] Finally, in November 2022, this Court granted the Government's Federal Rule of Criminal Procedure 35(b) motion—based on Edmond's later cooperation with the Government—and further reduced Edmond's sentence to 288 months' imprisonment.[15]

Edmond has now filed a 28 U.S.C. § 2255 motion.[16] In that motion, Edmond argues that he is actually innocent of the two-level increase in his offense level for possessing a firearm, as the evidence was insufficient to establish that he possessed a firearm during the commission of the underlying offense.[17]

---

[9]   Judge Muir is now deceased, and this matter was transferred to the undersigned in June 2021.
[10]  Doc. 41-2 at 32-33.
[11]  *Id.* at 41; *see* Doc. 34.
[12]  Doc. 34.
[13]  Doc. 41.
[14]  Docs. 56-58.
[15]  Docs. 78-80.
[16]  Doc. 93.
[17]  *Id.* at 4-5. Edmond further argues, in his reply brief, that the enhancement for a leadership role in the conspiracy was improperly applied, and that the sentencing enhancement violated his

4

The Government responds that Edmond's motion is time-barred, as it was filed beyond the one-year limitations period, equitable tolling does not apply, and neither the amended judgment entered pursuant to Amendment 782 nor the Government's Rule 35(b) motion resets the limitations period.[18] Finally the Government argues that, even if the motion were timely, it would fail on its merits, as a misapplication of the Sentencing Guidelines is not cognizable in a § 2255 motion, Edmond failed to raise any issue with the firearm enhancement in his direct appeal, and the enhancement was properly applied.[19]

In his reply brief, Edmond argues that his motion is timely because it was filed within one year of the date that the Court entered amended judgments in this matter and, in any event, equitable tolling should apply based upon how long it took the Government to file a Rule 35(b) motion.[20] He further contends that he is actually innocent of the firearm enhancement, and his motion is therefore timely.[21] Finally, Edmond asserts that his claim is cognizable in a § 2255 motion, as the sentencing

---

Eighth Amendment right against cruel and unusual punishment. Doc. 105 at 8-9, 11-13. As a general matter, this Court will not consider issues or claims raised for the first time in a reply brief, as the opposing party does not have an opportunity to respond to that claim. *In re Niaspan Antitrust Litig.*, 67 F.4th 118, 136 (3d Cir. 2023); *Lower Susquehanna Riverkeeper v. Keystone Protein Co.*, 520 F. Supp. 3d 625, 638 (M.D. Pa. 2021). However, the Court need not address this issue because, as explained below, Edmond's motion is time-barred.

[18]   Doc. 97 at 4-11.
[19]   *Id.* at 11-16.
[20]   Doc. 105 at 1-5.
[21]   *Id.* at 9-10.

enhancements applied to him have been rendered invalid by an intervening change in the law.[22]

This matter is now ripe for disposition. For the reasons discussed below, the Court will deny Edmond's motion as time barred.

## II.   DISCUSSION

### A.   Timeliness of Motion

As a general matter, 28 U.S.C. § 2255 motions must be filed within one year of the date upon which a defendant's conviction becomes final.[23] "If a defendant does not pursue a timely direct appeal to the court of appeals, his or her conviction and sentence become final, and the statute of limitation begins to run, on the date on which the time for filing such an appeal expired."[24] In federal criminal matters, a defendant has fourteen days to file an appeal after the judgment is entered.[25]

Judge Muir issued the original judgment in this matter on July 24, 1997.[26] Edmond did not file a direct appeal, meaning that his conviction became final fourteen days later, on August 7, 1997. Consequently, Edmond's § 2255 motion was due on or before August 7, 1998. Edmond did not file his motion until March 8, 2023

---

[22]  *Id.* at 5-9.
[23]  28 U.S.C. § 2255(f)(1).
[24]  *Kapral v. United States*, 166 F.3d 565, 577 (3d Cir. 1999).
[25]  Fed. R. App. P. 4(b)(1)(A).
[26]  Doc. 34.

at the earliest,[27] and it is therefore clear from the record that his motion is facially untimely.

Nevertheless, as recounted above, Edmond provides three reasons why he believes the motion is timely or, at the least, not time barred. First, Edmond argues that the relevant judgment(s) for determining the timeliness of his motion are the amended judgments entered in April and November 2022, not the original judgment entered in 1997.[28] Second, Edmond asserts that he is actually innocent of the sentencing enhancements applied in his case, and his actual innocence operates as a gateway to consider even an untimely § 2255 motion.[29] Finally, he contends that

---

[27] Doc. 85. This motion was filed *pro se*. However, because Edmond is represented by counsel, the motion was withdrawn and a counseled motion was filed. As the motion is untimely under either the date that the *pro se* motion was filed or the date that the counseled motion was filed, the Court uses the earlier date for purposes of this Memorandum.

[28] *Id.* at 9-10.

[29] *Id.* at 9-10. Relatedly, Edmond argues that he may challenge his sentence because an intervening change in the law has rendered his sentencing enhancements invalid. *Id.* at 5-9. Edmond alleges that those changes arose as a result of the Supreme Court of the United States' decisions in *Apprendi v. New Jersey*, 530 U.S. 466 (2000) and *Alleyne v. United States*, 570 U.S. 99 (2013). Doc. 105 at 5-9. However, the law is clear that, where an intervening change in law has an impact on a sentence or conviction, a movant must file his § 2255 motion within one year of "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." 28 U.S.C. § 2255(f)(3). And the Third Circuit has held that neither *Apprendi* nor *Alleyne* apply retroactively to cases on collateral review. *See United States v. Reyes*, 755 F.3d 210, 212-13 (3d Cir. 2014). Even if those cases did apply retroactively on collateral review, Edmond must have filed his § 2255 motion by June 17, 2014 at the latest—one year after the Supreme Court issued its opinion in *Alleyne*. Because Edmond did not file his motion until 2023, neither *Apprendi* nor *Alleyne* render his motion timely. Edmond also appears to argue that he could not have filed this motion prior to his resentencing before the United States District Court for the District of Columbia, as he was facing a life sentence there. Doc. 105 at 5, 10. However, Edmond was resentenced on April 6, 2021, meaning that, even if true, his § 2255 motion would have been due by April 20, 2022, approximately eleven months prior to the date that he filed his pro se motion here. *United States v. Edmond*, No. 1:89-CR-00162-EGS-1 (D.D.C., ECF No. 318).

equitable tolling is appropriate based on the Government's conduct in filing a late Rule 35(b) motion.[30] The Court will evaluate these arguments in turn.

### 1.    Timeliness in Light of the Amended Judgment

The Court first addresses Edmond's assertion that his motion is timely in light of the amended judgment entered by this Court on November 8, 2022 in response to the Government's Rule 35(b) motion. Although the United States Court of Appeals for the Third Circuit has not considered whether an amended judgment, entered pursuant to the grant of a Rule 35(b) motion, is a final judgment for purposes of a § 2255 motion, the circuit courts that have considered this issue have, for two broad reasons, universally rejected the notion that such an amended judgment resets the limitations period to file a § 2255 motion.[31]

First, 18 U.S.C. § 3582(b) "states that although a district court may 'modify' a 'sentence to imprisonment' under Rule 35(b), a 'judgment of conviction that includes such a sentence *constitutes a final judgment for all other purposes*'" and "[t]he plain and obvious meaning of this language is that a Rule 35(b) reduction has no effect on the finality of the judgment of conviction."[32] This interpretation of the "plain meaning of the statute accords with Congress's intent" as expressed in the

---

[30]    Doc. 105 at 2-5.
[31]    *See United States v. Olvera*, 775 F.3d 726, 729 (5th Cir. 2015); *Murphy v. United States*, 640 F.3d 1303, 1306-09 (11th Cir. 2011); *Byers v. United States*, 561 F.3d 832, 835 (8th Cir. 2009); *United States v. Chapman*, 220 F. App'x 827, 830 (10th Cir. 2007); *Reichert v. United States*, 101 F. App'x 13, 14 (6th Cir. 2004); *United States v. Schwartz*, 274 F.3d 1220, 1223-25 (9th Cir. 2001); *United States v. Sanders*, 247 F.3d 139, 142-44 & n. 2 (4th Cir. 2001).
[32]    *Murphy*, 634 F.3d at 1308.

Senate Report accompanying that statute, which explained that, despite the filing of a Rule 35(b) motion, the "judgment of conviction is final."[33]

Second, "concluding that a Rule 35(b) modification does not reset the § 2255(f) limitations clock is consonant with Congress's overriding purpose in enacting [the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)]. Congress designed AEDPA to achieve finality in criminal cases, both federal and state."[34] In light of that purpose, courts must "give strict interpretation to the one-year statute of limitations to avoid creating a loophole which is contrary to the legislative intent of insuring a greater degree of finality" and "to hold that a district court's Rule 35(b) modification to a sentence constitutes a new final judgment would create just such a loophole."[35]

The Court finds the reasoning of these courts persuasive, and likewise holds that the entry of an amended judgment pursuant to a Rule 35(b) motion does not reset § 2255's limitations period.[36] Accordingly, the entry of such an amended judgment here does not render Edmond's motion timely.

---

[33]  *Id.* (internal quotation marks omitted).

[34]  *Id.* at 1309 (internal quotation marks omitted).

[35]  *Id.* (brackets and internal quotation marks omitted).

[36]  The same is true of the entry of an amended judgment pursuant to a sentence reduction in accordance with Amendment 782 of the Sentencing Guidelines, which does not result in the entry of a final judgment that would reset the limitations period. *See United States v. Quary*, 881 F.3d 820, 822 (10th Cir. 2018); *Sherrod v. United States*, 858 F.3d 1240 (9th Cir. 2017); *United States v. Jones*, 796 F.3d 483 (5th Cir. 2015); *White v. United States*, 745 F.3d 834 (7th Cir. 2014).

## 2.    Claim of Actual Innocence of Sentencing Enhancement

The Court next turns to Edmond's claim that he is actually innocent of the level increase added pursuant to USSG § 2D1.1(b)(1), which creates a gateway for the filing of his untimely claims.[37]

The Supreme Court has held "that actual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar or, as in this case, expiration of the statute of limitations."[38] The Supreme Court "caution[ed], however, that tenable actual-innocence gateway pleas are rare."[39] "To pass through that gateway, the [movant] must persuade the District Court that 'in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'"[40]

> To satisfy the demanding actual innocence exception, a petitioner must (1) present new, reliable evidence of his innocence; and (2) show by a preponderance of the evidence that it is more likely than not that no reasonable juror would have convicted him (*i.e.*, a reasonable juror would have reasonable doubt about his guilt) in light of the new evidence.[41]

"Although delay in filing is not a bar to relief, it nonetheless remains 'a factor in determining whether actual innocence has been reliably shown.'"[42]

---

[37]  Doc. 105 at 9-10.
[38]  *Wallace v. Mahanoy*, 2 F.4th 133, 151 (3d Cir. 2021) (quoting *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013) (ellipsis omitted)).
[39]  *Id.* (quoting *McQuiggin*, 569 U.S. at 386).
[40]  *Id.* (quoting *McQuiggin*, 569 U.S. at 387).
[41]  *Id.*
[42]  *Id.* (quoting *McQuiggin*, 569 U.S. at 387).

While the Third Circuit has not examined the question of whether the actual innocence exception may apply to sentencing concerns other than the death penalty, rather than only actual innocence of the crime of conviction,[43] the United States Court of Appeals for the Fourth Circuit has rejected the proposition that actual innocence of a sentencing enhancement would permit an individual to pursue an untimely § 2255 motion. In *United States v. Jones*, the Fourth Circuit addressed a request to extend the Supreme Court's "reasoning of *McQuiggin,* in which the petitioner claimed actual innocence of his crime of conviction, to his case, in which he asserts actual innocence of his sentence."[44]

The Fourth Circuit rejected that request for several reasons. First, it reasoned that "the *McQuiggin* Court made no explicit indication that its holding was intended to be applied to the actual innocence of sentence context, and its language and reasoning belie such a conclusion."[45] Rather, the Supreme Court had repeatedly expressed the limited nature of its holding, which applied only to convictions.[46] Second, the Supreme Court's "concern about incarcerating the innocent, cannot, as

---

[43] *See Cristin v. Brennan*, 281 F.3d 404, 422 (3d Cir. 2002) (declining to consider whether the actual innocence exception may apply to a sentence rather than a conviction because it had "no basis for concluding that some factual finding at sentencing was erroneous"). *But cf. Arbelaez-Agudelo v. Zickefoose*, 497 F. App'x 179, 182 (3d Cir. 2012) (holding that "a claim that [appellant] is technically 'innocent' of a guidelines provision . . . is far from the 'exceptional circumstance' necessary to warrant consideration under [28 U.S.C.] § 2241" (citing *Okereke v. United States,* 307 F.3d 117, 120-21 (3d Cir. 2002))).

[44] 758 F.3d 579, 584 (4th Cir. 2014).

[45] *Id.*

[46] *Id.*

a substantive matter, be easily applied to a sentencing decision" where "a sentencing error does not at all implicate guilt."[47]

Further, the court noted that transferring the actual innocence standard to a mere sentencing error would "appl[y] the term 'miscarriage of justice' to practically any error, without recognizing that various circumstances present varying degrees of injustice."[48] The Fourth Circuit observed that claims of actual innocence of the crime of conviction need only be proven by a preponderance of the evidence, whereas claims of actual innocence of a death sentence must be demonstrated by clear and convincing evidence.[49] This is so because "[c]laims of actual innocence *pose less of a threat to scarce judicial resources and to principles of finality and comity* than do claims that focus solely on the erroneous imposition of the death penalty" and "[o]f greater importance, *the individual interest in avoiding injustice is most compelling in the context of actual innocence.* The quintessential miscarriage of justice is the execution of a person who is entirely innocent."[50] The Fourth Circuit reasoned that "*Schlup* makes clear that not all miscarriage of justice claims are equivalent. And *Schlup* only compared actual innocence of the crime of conviction with actual innocence of a *death penalty* sentence—a substantial step removed from the noncapital sentencing context."[51]

---

[47] *Id.*
[48] *Id.* at 585.
[49] *Id.*
[50] *Id.* (quoting *Schlup v. Delo*, 513 U.S. 298, 324-27 (1995)).
[51] *Id.*

These reasons led the Fourth Circuit to "conclude that *McQuiggin* does not extend to cases in which a movant asserts actual innocence of his sentence, rather than of his crime of conviction."[52] This Court adopts the reasoning of the Fourth Circuit, and holds that Edmond's claim of actual innocence of his sentence cannot serve as a gateway to consider his untimely claim.

Furthermore, even if actual innocence of an enhancement under the Sentencing Guidelines were sufficient to render a claim timely, Edmond's assertion of actual innocence would still fail. A claim of actual innocence must be supported by "new, reliable evidence."[53] The Third Circuit has explained "that new evidence generally must be newly discovered," with the exception that when a movant "asserts ineffective assistance of counsel based on counsel's failure to discover or present to the fact-finder the very exculpatory evidence that demonstrates his actual innocence, such evidence constitutes new evidence for purposes of the . . . actual innocence gateway."[54]

Here, there are no assertions of ineffective assistance of counsel and, consequently, any claim of actual innocence must be supported by newly discovered evidence. Edmond points to none. Rather, all evidence to which he cites was

---

[52] *Id.* at 586. *See also Lee v. Schnurr*, 858 F. App'x 278, 279-80 (10th Cir. 2021) (noting "that we have held that a person cannot be innocent of a non-capital sentence given a statutory sentence enhancement" and therefore the actual innocence exception does not apply to non-capital sentences), *cert. denied sub nom. Lee v. Meyer*, 142 S. Ct. 779 (2022).

[53] *Wallace*, 2 F.4th at 151.

[54] *Reeves v. Fayette SCI*, 897 F.3d 154, 163-64 (3d Cir. 2018).

13

available at the time of sentencing, and Edmond merely contests that the evidence presented "proved beyond a reasonable doubt that Mr. Edmond should have been convicted of a firearm enhancement."[55] This is simply insufficient to support a claim of actual innocence and, consequently, such an exception to the limitations period does not apply.[56]

### 3.   Equitable Tolling

Finally, the Court turns to Edmond's contention that his motion should be deemed timely filed because he is entitled to equitable tolling.[57] Specifically, Edmond argues that the Government's delay in filing a Rule 35(b) motion in the criminal case before the United States District Court for the District of Columbia—where Edmond had previously been sentenced to life in prison—was responsible for his delay in filing this § 2255 motion.[58]

"Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way."[59] "As with most issues involving a court's exercise of equitable powers, there are no bright lines in determining whether

---

[55] Doc. 105 at 6.
[56] *See Suggs v. United States*, No. CR 14-349-2, 2018 WL 6065411, at *8 (E.D. Pa. Nov. 20, 2018) (denying § 2255 motion when "the § 2255 Motion is devoid of any evidence, either newly-discovered or which could have been presented in state court, that would demonstrate Petitioner's actual innocence of his state court convictions" and movant instead "repeatedly claims that insufficient evidence supported his state court convictions").
[57] Doc. 105 at 3-5.
[58] *Id.*
[59] *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005).

equitable tolling is warranted in a given case."[60] "Thus, [courts] must 'exercise judgment in light of prior precedent, but with awareness of the fact that specific circumstances, often hard to predict in advance, could warrant special treatment in an appropriate case.'"[61] "[E]quitable tolling is appropriate when principles of equity would make the rigid application of a limitation period unfair, but . . . a court should be sparing in its use of the doctrine."[62]

As to whether a movant has been diligently pursuing his rights, "[t]he diligence required for equitable tolling purposes is reasonable diligence, not maximum, extreme, or exceptional diligence."[63] "A determination of whether a petitioner has exercised reasonable diligence is made under a subjective test: it must be considered in light of the particular circumstances of the case."[64]

With respect to extraordinary circumstances, "to obtain relief there must be a causal connection, or nexus, between the extraordinary circumstances [that the movant] faced and [his] failure to file a timely federal [motion]."[65] A movant cannot demonstrate such a connection if he, "acting with reasonable diligence, could have filed on time notwithstanding the extraordinary circumstances."[66] Stated differently,

[60] *Ross v. Varano*, 712 F.3d 784, 799 (3d Cir. 2013) (brackets and internal quotation marks omitted).
[61] *Id.* (quoting *Holland v. Florida*, 560 U.S. 631, 650 (2010)).
[62] *Id.*
[63] *Id.*
[64] *Id.*
[65] *Id.* at 803.
[66] *Brown v. Shannon*, 322 F.3d 768, 773 (3d Cir. 2003) (quoting *Valverde v. Stinson,* 224 F.3d 129, 134 (2d Cir. 2000)).

"[i]f the person seeking equitable tolling has not exercised reasonable diligence in attempting to file after the extraordinary circumstances began, the link of causation between the extraordinary circumstances and the failure to file is broken, and the extraordinary circumstances therefore did not prevent timely filing."[67]

The Court assumes, for the purposes of this motion, that the Government's delay in filing a Rule 35(b) motion in the federal case before the District of Columbia constitutes an extraordinary circumstance that prevented Edmond from earlier filing a § 2255 motion.[68] Even so, the Court concludes that Edmond did not exercise reasonable diligence after the court in that case granted the Government's Rule 35(b) motion and vacated Edmond's life sentence. The Government filed its motion in the District of Columbia case in 2019, and Edmond was ultimately resentenced by the District Court for the District of Columbia on April 6, 2021.[69]

Edmond did not file his § 2255 motion here until, at the earliest, March 8, 2023—691 days after the entry of the amended judgment in the District of Columbia.[70] There was no exercise of diligence in the intervening days, months, and

---

[67] *Id.* (quoting *Valverde,* 224 F.3d at 134).

[68] Any purported delay on the Government's part in filing a Rule 35(b) motion in this case cannot constitute an extraordinary circumstance that prevented the timely filing of a § 2255 motion. There is some persuasive logic in the argument that Edmond could not realistically have filed a motion challenging a sentencing enhancement in this matter while he was still serving a life sentence in a different case, but no such logic applies to the Rule 35(b) motion in this matter. Rather, Edmond was always facing a term sentence of 360 months' imprisonment or less, and a successful § 2255 motion would always have had the effect of reducing that sentence. *See* Docs. 34, 58.

[69] *United States v. Edmond*, No. 1:89-CR-00162-EGS-1 (D.D.C., ECF No. 215, 318).

[70] Doc. 84.

years after the entry of the amended judgment in the District of Columbia case—a time when the filing of a § 2255 motion could have had an impact on Edmond's sentence. Instead, Edmond filed a motion for a sentence reduction pursuant to Amendment 782 to the Sentencing Guidelines in August 2021, filed a motion to compel the Government to file a Rule 35(b) motion in July 2022 and again in August 2022, and filed a motion for reconsideration of this Court's decision on the Government's Rule 35(b) motion in November 2022.[71] Clearly Edmond was capable of filing motions that were aimed at reducing his sentence in this case during the months after his sentence in the District of Columbia was reduced, but chose for an unexplained reason to pursue other motions rather than a § 2255 motion. While that decision may have been reasonable—and even well-reasoned—it demonstrates a lack of reasonable diligence in filing a § 2255 motion, which could have been filed simultaneous to any of those other motions.

Accordingly, the Court is unable to discern any causal connection between the Government's delay in filing a Rule 35(b) motion in the District of Columbia case and Edmond's inability to file an earlier § 2255 motion here. Rather, Edmond failed to exercise reasonable diligence in filing his § 2255 motion after the court in the District of Columbia entered its amended judgment,[72] which breaks any link of

---

[71] Docs. 41, 60, 62, 82.

[72] *Cf. Pace v. DiGuglielmo*, 544 U.S. 408, 419 (2005) (stating "not only did petitioner sit on his rights for years *before* he filed his PCRA petition, but he also sat on them for five more months *after* his PCRA proceedings became final before deciding to seek relief in federal court . . .

causation, "and the extraordinary circumstances therefore did not prevent timely filing" of Edmond's § 2255 motion.[73] Equitable tolling does not apply, Edmond's motion is time barred, and the motion will be denied as such.

### B.     Certificate of Appealability

Because this Court will deny Edmond's § 2255 motion, this decision will not be appealable unless this Court or a circuit justice issues a certificate of appealability.[74] A certificate of appealability will not issue absent "a substantial showing of the denial of a constitutional right."[75] To satisfy this standard Edmond must demonstrate that reasonable jurists would find that the Court's procedural ruling is debatable or wrong.[76] This Court finds that, given the clear weight of authority demonstrating that no exception to the limitations period applies and Edmond's motion is time-barred, Edmond has not met this burden, and the Court therefore declines to issue a certificate of appealability.

---

Under long-established principles, petitioner's lack of diligence precludes equity's operation").

[73]   *Brown*, 322 F.3d at 773.

[74]   28 U.S.C. § 2253(c)(1)(B).

[75]   *Id.* § 2253(c)(2).

[76]   *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see Miller-El v. Cockrell*, 537 U.S. 322, 336-38 (2003).

**III.    CONCLUSION**

For the foregoing reasons, Edmond's 28 U.S.C. § 2255 motion will be denied as time barred. The Court will also deny a certificate of appealability.

An appropriate Order follows.

BY THE COURT:


_s/ Matthew W. Brann_
Matthew W. Brann
Chief United States District Judge